UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KELLY EUGENE BITNER                                    CIVIL ACTION

VERSUS                                                      NO.  14-1459

C. WEBER ET AL.                                          SECTION "J" (4)

<u>REPORT AND RECOMMENDATION</u>

Before the Court is a **Motion for Summary Judgment (R.  Doc. 15)** filed by the plaintiff, which along with this matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**.  A *Spears* Hearing  took place on October 7, 2014 with Kelly Bitner participating by telephone. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

I.      <u>Factual Background</u>

The plaintiff, Kelly Eugene Bitner ("Bitner") is currently being held at the Concordia Parish Work Release in Vidalia, Louisiana.  He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Sheriff C. Weber, Major Brinkley, Captain Zeringue, Lt. Leclair, Sergeant Naquin and the Lafourche Parish Sheriff's Department.

Bitner alleges that the administrators of the LaFourche Sheriffs Work Program (LSWP) harassed and retaliated against him for filing a complaint against them.  He alleges that the LSWP

has a contract with the Louisiana Department of Public Safety and Corrections to house and employ state prisoners who qualify for work release status.  On July 17, 2013, Bitner alleges that he violated the conditions of his parole and as an alternative to revocation he was given a six month term at the work release program.  He alleges that he began his term on August 5, 2013 and on October 17, 2013 he was forced under threat of return to prison to accept a job that required him to work seven twelve-hour shifts in one week with no overtime pay.

Bitner made verbal complaints to both Captain Zeringue and Lt. Leclair to no avail.  He thereafter alleges that he filed a formal administrative complaint using the defendants' grievance system.  Lt. Leclair responded stating that his complaint was frivolous and if this type of abuse of the system continued, he could be removed from the work release program.  On December 3, 2013 Bitner field a complaint with the United States Department of Labor complaining that he was not compensated for overtime work.

On December 29, 2013, Bitner was informed by the defendants that he was to begin a new job with K & W Leasing at Bollinger Shipyard where upon his arrival he was informed that he would be required to wear a respirator at all times.  Bitner alleges that he thereafter advised the safety supervisor, Mr. Carl Guidry that he had chronic lung problems which would prevent him from wearing a respirator.  He alleges that the defendants who assigned him to K & W knew he had these medical issues but assigned him anyway.

On January 3, 2014, Bitner contends that he was issued a formal misconduct notice by Sgt. Naquin because he10 was terminated for failure to wear safety equipment, namely a respirator. Bitner alleges that according to Naquin, this was the second instance in which he was terminated for not wearing his safety equipment.  However, Bitner contends that he was never terminated from

the previous job for failure to wear safety equipment as alleged.   As a result of the misconduct report, Bitner contends that he received notice from Captain Zeringue that he was removed from the program and returned to prison.   He complains that the defendants were aware that if he was removed from the program his parole would be revoked and he would serve the remainder of his sentence in prison.   He seeks to hold the defendants responsible in their individual and official capacities.   He therefore seeks compensation for his loss of liberty, court costs and punitive damages.

### A.   *Spears* Hearing

On October 7, 2014, Bitner participated in a *Spears* hearing.   He testified that he was on parole but he violated it.   On August 5, 2013, rather than being returned to prison for violating his parole, he was allowed to attempt a six month turn around by participating in a work release program at LaFourche Parish Work Release Program.   If he completed the program, he would have been allowed to return to his status of parole and given back his freedom.   At LaFourche Parish Work Release Program, Bitner was allowed to work for wages.   There were, according to Bitner, twenty prisoners who were strong armed into working a job at LaFourche Sugars which required them to work seven twelve hour shifts with no overtime pay.

He testified that at the same time, the regular employees of the company were allowed to make overtime pay.   Bitner testified that he complained to Major Brinkley, Captain Zeringue and Lieutenant LeClair. Bitner testified that he filed a complaint about the no overtime rule, Lieutenant LeClair responded indicating that his complaint was frivolous and that he would be removed from the program if he continued to complain.   During the *Spears* hearing Bitner also testified that he was required to clock in and he testified that he has pay stubs to support his position.

He testified that on December 3, 2013, he filed a complaint with the U.S. Department of Labor which was denied because his place of employment was a farm production facility. The Department of Labor told him that it would not intervene. Bitner testified that he understood the exemption for farmers but did not understand why their employees could actually be paid overtime.

He testified that he last worked for the sugar company on December 25, 2013 because the job ended. He thereafter worked for Bollinger Shipyard, a company he had previously worked for. He further testified that he suffers with chronic lung disease which causes him to let out oxygen but not take it in. Bitner testified that he met with the Bollinger supervisor who indicated that given his skills he would be placed in a section where he did not need a respirator. He thereafter was assigned to the deck of the boat which eliminated the need for the respirator.

After the third day, he returned from work and was told that he needed to submit to a urine sample, which he did. He testified that he was terminated for failure to wear the respirator and it was the second time that he failed to do so, which Bitner disputes. Bitner testified that Bollinger never told him that he was terminated and in fact, he learned that even Bollinger did not know what happened to him. He testified that he was handcuffed and sent back to the jail with no follow up disciplinary hearing for the violation. He testified that he spent eleven months in prison as a result.

He confirmed that he is imprisoned for simple burglary and was scheduled to be released in November 2014. Bitner testified that LeClair responded to his grievance and also retaliated against him. Bitner testified that he sued Captain Zeringue because he ultimately made the decision to remove him from the program. He testified that they had to have a reason to remove him from the program and so they manufactured one. He complained to Major Brinkley about his situation but she did nothing. He conceded that she does not work at the facility everyday but that she visits a

few days a week.  Bitner testified that he had expected that she would investigate what was going on.  He testified that the prison officials were aware of his lung problem and he should have not been sent to this job.

Bitner testified that there is a nurse at the work release facility and he had to see her because of a cold which was aggravated by his lung problems. Bitner testified that he actually submitted a second grievance for the retaliation which he contends was his removal from the Bollinger job.  He did not indicate the results of the grievance.

### B.     Motion for Summary Judgment

Bitner filed a motion for summary judgment seeking judgment against the defendants because they allegedly placed him in a work release job that he could not medically perform.  As a result of his inability to work in the job, he alleges that they removed him from the program and issued a false misconduct report.  Bitner contends that the defendants retaliated against him for exercising his first amendment right to file a complaint against them.

He further alleges a violation of his due process rights when he was removed from the program based upon the misconduct report.  Finally, Bitner contends that his removal from the work release program resulted in him having to serve an addition eleven months in prison due to his lost work release status which damaged his ability to establish strong community ties before his release.

## II.    Standard of Review for Frivolousness

When a prisoner files an *in forma pauperis* civil action seeking redress from a governmental entity or officer or employee of a governmental entity, the Court is obliged to evaluate the complaint and dismiss it without service of process if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such

relief.  28 U.S.C. §§ 1915(e)(2) and 1915A; *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990).

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28.  Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

A hearing need not be conducted for every *pro se* complaint.  *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).  A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone.  *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).  District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

**III.   Analysis**

Bitner alleges that after violating his parole he was given a chance to participate in the LaFourche Work Release Program.  While in the program, he contends that he worked overtime which consisted of working twelve hours days with no overtime pay.  He contends that he was

ultimately retaliated against when he was terminated from the program because he had complained to his supervisors that he believed he should have received overtime pay.

To prove a retaliation claim under § 1983, a prisoner plaintiff must establish: (1) a specific constitutional right at issue; (2) the defendant's intent to retaliate against the prisoner for his exercise of that right; (3) a retaliatory adverse action; and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). The Fifth Circuit has also cautioned that "[t]o assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

The inmate must prove more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Instead, the inmate must show causation by proving that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods*, 60 F.3d at 1166. This is recognized as a "significant burden" that requires the inmate to "produce direct evidence of motivation or, the more probable scenario, . . . 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id*. (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)); *Randle v. Woods*, 299 F. App'x 466, 468 (5th Cir. 2008); *Shelton v. Lemons*, No. 11-20670, 2012 WL 3493982, at *2 (5th Cir. Aug. 15, 2012).

Under these standards, the inmate must point to a specific constitutional right that has been violated as a direct result of the retaliatory action. *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996); *Woods*, 60 F.3d at 1166. An adverse action under the third prong is an act "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). The Fifth Circuit has stated that "this threshold is intended to weed

out only inconsequential actions and is not a means to excuse more serious retaliatory acts by prison officials." *Id.* For this reason, "mere conclusory allegations of retaliation" or a prisoner's own beliefs are insufficient to establish retaliation. *Jones*, 188 F.3d at 325; *see also Randle*, 299 F. App'x at 468.

As an initial matter, it is well settled that prison officials may not retaliate against a prisoner for exercising his First Amendment right to complain through proper channels about a prison official's misconduct. *Morris*, 449 F.3d at 684; *Woods*, 60 F.3d at 1164. However, there is no federally protected right for an inmate to be compensated for work performed while in prison. *Wendt v. Lynaugh,* 841 F.2d 619, 621 (5th Cir. 1988).

Louisiana law does however authorize its prisons to conduct work release programs in which inmates work for free-world employers at that employer's workplace. *See Reimonenq v. Foti*, 72 F.3d 472 ( 5th Cir. 1996). The purpose of the program is to prepare inmates upon release from prison to function as responsible, self-sufficient members of society. *Id.*

Plaintiff essentially argues that the failure to pay him for his inmate labor violated the Fair Labor Standards Act ("FLSA"), 28 U.S.C. § 202, which requires employers to pay employees a minimum hourly wage and overtime pay. The essential purpose of the FLSA is to provide workers with a "minimum standard of all living necessary for health, efficiency, and general well-being of workers."

> [T]he FLSA does not cover these inmates because the statute itself states that Congress passed minimum wage standards in order to maintain a "standard of living necessary for health, efficiency and general well-being of workers." 29 U.S.C. § 202(a). While incarcerated, inmates have no such needs because the DOC provides them with the food, shelter, and clothing that employees would have to purchase in a true employment situation. So long as the DOC provides for these needs, [the inmates] can have no credible claim that inmates need a minimum wage to ensure

their welfare and standard of living.

*See Harker v. State Use Industries,* 990 F. 2d 131, 133 (4th Cir. 1993); *see also Reimonenq,* 72 F.3d 472 (finding that inmates who participate in work release program have no claim against the government under FLSA); *see Loving v. Johnson,* No. 5:04 CV 305, 2005 WL 4156282 (N.D. Tex May 9, 2005).

In *Reimonenq,* the Fifth Circuit held that as a matter of law, a sheriff/custodian is simply not the "employer" for purposes of the FLSA of inmates working in a prison work release program for private employers outside the jail. 72 F.3d at 476-77. When prisoners are permitted to work for private employers, they are provided no compensable services from the government or otherwise benefitting the government. At its root, the work release program exists for the benefit of the prisoner himself. While there is a reimbursement for maintenance costs that the sheriff receives, the reimbursement of costs are not an economic benefit sufficient to establish an employer/employee relationship. Therefore, as in *Reimonenq,* the prison officials in this case are mere intermediaries between Bitner and his private employers.

Because there is no constitutional right to be compensated, it follows then that the officers who ignored Bitner's overtime complaint or improperly noticed him that he was removed from the program could also not be held liable for retaliating against him. Further because there is no constitutional right to participate in a work release program, Bitner's placement in a job and alleged removal from the program for not being able to perform the job could not constitute retaliation. Therefore, Bitner has failed to state a claim for which relief may be granted.

IV.    **Recommendation**

**IT IS RECOMMENDED** that Bitner's § 1983 claims against all defendants, Sheriff C. Weber, Major Brinkley, Captain Zeringue, Lieutenant Leclair, Sergeant Naquin, each in their individual and official capacities, and the Lafourche Parish Sheriff's Department be **DISMISSED WITH PREJUDICE** as frivolous, for failure to state a claim for which relief can be granted, and/or for seeking relief against an immune defendant pursuant to § 1915(e) and § 1915A.

**IT IS FURTHER RECOMMENDED THAT** the **Motion for Summary Judgment (R. Doc. 15)** should be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[1]

New Orleans, Louisiana, this 22nd day of January, 2015.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[1]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.