UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KELLY EUGENE BITNER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-1459** |
| **SHERIFF C. WEBER, MAJOR BRINKLY, CAPT. ZERINGUE, LT. LECLAIR, SGT. NAQUIN, LAFOURCHE PARISH SHERIFF DEPT.** | **SECTION "J"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**. On October 7, 2014, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

I.   **Factual Background**

   A.   **The Complaint**

The plaintiff, Kelly Eugene Bitner ("Bitner"), was housed in the Concordia Parish Work Release Facility in Vidalia, Louisiana at the time of the filing of this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Sheriff C. Weber, Major Brinkly, Captain Zeringue, Lieutenant Leclair, Sergeant Naquin, and the Lafourche Parish Sheriff's

---

[1] 766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims.  The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 24.  The plaintiff was sworn prior to testifying and the hearing was digitally recorded.

Department. He eventually notified the Court of his transfer to the Concordia Parish Correctional Facility.[3]

In his complaint, Bitner alleged that the administrators of the Lafourche Parish Sheriff's Work Release Program ("LPSWP") harassed and retaliated against him for filing a grievance complaint against them. Bitner claims that the LPSWP has a contract with the Louisiana Department of Public Safety and Corrections ("DOC") to house and employ state prisoners who qualify for work release status. He alleges that, on July 17, 2013, he violated the conditions of his parole and, as an alternative to revocation, he was given a six month term at the work release program. He alleges that he began the term on August 5, 2013, and on October 17, 2013, he was forced under threat of return to prison to accept a job that required him to work seven twelve-hour shifts in one week with no overtime pay.

Bitner made verbal complaints to both Captain Zeringue and Lieutenant Leclair to no avail. He further alleges that he filed a formal administrative complaint using the facility's grievance procedure. Lieutenant Leclair responded to the grievance stating that the complaint was frivolous and if this type of abuse of the system continued, Bitner could be removed from the work release program. Thereafter, on December 3, 2013, Bitner filed a complaint with the United States Department of Labor complaining that he was not compensated for the overtime work.

On December 29, 2013, Bitner was informed by the defendants that he was to begin a new job with K&W Leasing at Bollinger Shipyard, where upon his arrival he was informed that he would be required to wear a respirator at all times. Bitner alleges that he advised the safety supervisor, Carl Guidry, that he had chronic lung problems which would prevent him from wearing a respirator.

---

[3]Rec. Doc. No. 25.

Bitner alleges that the defendants who assigned him to K&W knew he had these medical issues but assigned him anyway.

Bitner contends that, on January 3, 2014, he was issued a formal misconduct notice by Sergeant Naquin advising him that he was terminated for failure to wear safety equipment, a respirator. Bitner alleges that according to Naquin, this was the second instance in which he was terminated for not wearing his safety equipment. Bitner claims, however, that he was never terminated from a previous job for failure to wear safety equipment. As a result of the misconduct report, Bitner received notice from Captain Zeringue that he was removed from the program and was to be returned to prison.

Bitner asserts that the defendants were aware that if he was removed from the program his parole would be revoked and he would serve the remainder of his sentence in prison. He names the defendants responsible in their individual and official capacities and seeks compensation for his loss of liberty, court costs and punitive damages.

    **B.**    **The *Spears* Hearing**

During the hearing, Bitner testified that he was incarcerated following a violation of his parole. On August 5, 2013, rather than being returned to prison, the court allowed him to participate in a six-month turnaround program by participating in a work release program in Lafourche Parish. He was advised that, if he completed the program, he would be allowed to return to his parole status. At LPSWP, Bitner was allowed to work for wages. He stated that there were twenty (20) prisoners in the program who were "strong armed" into working at Lafourche Sugars, which required each person to work seven twelve-hour shifts per week with no overtime pay.

He testified that, at the same time, the regular employees of the company were allowed to make overtime pay. Bitner stated that he complained to Major Brinkly, Captain Zeringue and Lieutenant LeClair. He then filed a grievance complaint, and Lieutenant LeClair responded indicating that his complaint was frivolous and that he would be removed from the program if he continued to complain. Bitner advised the Court that he had time sheets and pay stubs to support his assertion.

Bitner also testified that, on December 3, 2013, he filed a complaint with the United States Department of Labor which was denied because the place of employment was a farm production facility. Bitner testified that he understood the exemption for farmers but did not understand why the company's employees could actually be paid overtime.

He further stated that he last worked for the sugar company on December 25, 2013 when the job assignment ended. He was then sent to work at Bollinger Shipyards, a company for which he had previously worked. He testified that he suffers with a chronic lung disease which prevents him from taking in oxygen. As a result, he met with the Bollinger supervisor who indicated that given his skills he would be placed in a section where he did not need a respirator. He thereafter was assigned to the deck of the boat which eliminated the need for the respirator.

After the third day at work, he was advised that he had to submit a urine sample. After that, he was terminated for failure to wear the respirator and the report indicated that it was the second time that he failed to do so, something Bitner disputes. Bitner stated that Bollinger never told him that he was terminated and in fact, he later learned that even the Bollinger employees did not know what happened to him.

Bitner testified that he was handcuffed at the LPSWP and sent back to the jail with no follow up disciplinary hearing for the violation. He indicated that he spent eleven (11) months in the jail after this incident.

Bitner confirmed that he is in prison now for a simple burglary charge and was scheduled to be released in November of 2014. Bitner advised the Court that he sued Lieutenant Leclair because he responded to the grievance complaint and retaliated against him by later removing him from the job at Bollinger. He stated that he filed a second grievance about the retaliation. He also sued Captain Zeringue because he ultimately made the decision to remove him from the program and return him to jail.

Bitner asserted that the defendants manufactured the reason for his removal from the program. He stated that he named Major Brinkly, a part time supervisor at the jail, as a defendant because she knew about the situation and did not investigate. He further stated that prison officials were aware of his lung problem and should not have assigned him that job. As support, he stated that he saw the nurse at the work release facility for a cold that was aggravated by his lung problems.

**II.      Standard of Review under Fed. R. Civ. P. 41(b)**

Rule 41(b) of the Federal Rules of Civil Procedure specifically provides that a court may, in its discretion, dismiss a plaintiff's claim for failure to prosecute or for failure to comply with the Federal Rules of Civil Procedure or any order of the court. A Rule 41(b) dismissal is considered an adjudication on the merits. Fed. R. Civ. P. 41(b). In determining whether to dismiss a claim, courts have traditionally considered the extent to which the plaintiff, rather than his counsel, has been responsible for any delay or failure to comply with a rule or order. *See*, *e.g.*, *Markwell v. County of Bexar*, 878 F.2d 899, 902 (5th Cir. 1989); *Price v. McGlathery*, 792 F.2d 472, 474-75 (5th Cir.

1986); *Silas v. Sears, Roebuck & Co.*, 586 F.2d 382, 385 (5th Cir. 1978); *Ramsay v. Bailey*, 531 F.2d 706, 708-09 (5th Cir. 1976).

In this case, the plaintiff is without counsel and is responsible for the prosecution of his case. A *pro se* litigant is not exempt from compliance with relevant rules of procedural and substantive law. *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981); *Beard v. Experian Information Solutions Inc.*, 214 Fed. App'x 459, 462 (5th Cir. 2007). A *pro se* litigant who fails to comply with procedural rules has the burden of establishing excusable neglect, which is a strict standard requiring proof of "more than mere ignorance." *See Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir.1988) (quotation omitted); *Birl*, 660 F.2d at 593.

### III.   Analysis

The record reflects a continuing pattern of returned mail addressed to Bitner at the address he provided to the Court on November 14, 2014, at the Concordia Parish Correctional Facility ("CPCF"). On January 7, 2015, this Magistrate Judge denied Bitner's Motion for Scheduling Management.[4] The Clerk of Court mailed a copy of the order to Bitner's address of record at the Concordia Parish Correctional Facility. The envelope containing the order was returned on January 23, 2015, marked "CPCF - Return to Sender" and "Return to Sender - Refused - Unable to Forward."[5]

In the meantime, on January 23, 2015, the undersigned Magistrate Judge issued a Report and Recommendation addressing Bitner's claims and recommending that Bitner's Motion for Summary Judgment be denied, and the claims against the defendants be dismissed as frivolous and otherwise

---

[4]Rec. Doc. No. 26.

[5]Rec. Doc. No. 28.

for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A.[6]  The Clerk of Court mailed a copy of the Report and Recommendation to Bitner at his address of record.  On February 9, 2015, the envelope containing the copy was returned marked "CPCF Return to Sender."[7]

On February 18, 2015, the District Judge adopted the Report and Recommendation in part to deny the Motion for Summary Judgment and otherwise chose without stated reasons not to dismiss plaintiff's complaint.[8]  The Court referred the matter back to the undersigned Magistrate Judge for further proceedings.[9]  The envelopes containing the District Judge's order following the Report and Recommendation and the referral order were returned on March 4 and March 31, 2015, respectively, each marked "CPCF - Return to Sender" and "Return to Sender - Refused - Unable to Forward."[10]

On May 29, 2015, the undersigned issued a Rule to Show Cause to Bitner to afford him one last opportunity to accept the Court's mail and/or provide cause for his failure to prosecute the case and inform the Court of a more current address.[11]  The envelope containing a copy of this order was also returned on June 15, 2015, marked "CPCF Return to Sender" and "Return to Sender - No Such Street - Unable to Forward."[12]

---

[6]Rec. Doc. No. 27.

[7]Rec. Doc. No. 29.

[8]Rec. Doc. No. 30.

[9]Rec. Doc. No. 31.

[10]Rec. Doc. Nos. 32, 33.

[11]Rec. Doc. No. 34.

[12]Rec. Doc. No. 35.

The Court's orders were mailed to Bitner at the address he provided to the Court after the filing of his complaint. According to the returned envelopes, Bitner has either refused to accept the Court's mail and/or mail for him is no longer being accepted at the Concordia Parish Correctional Facility.

The record therefore reflects that Bitner has failed to provide the Court with more current contact information as required by L.R. 11.1. Bitner was made aware of his continuing obligation to keep the Court informed of his whereabouts as reflected in paragraph VI on page six of his form complaint, where he signed the Plaintiff's Declaration.[13]

Contrary to these mandates, Bitner has not notified the Court of his current address, and he otherwise has not contacted the Court about his case since he provided his change of address on November 14, 2014.[14] In addition, under L.R. 41.3.1, Bitner's failure to provide his current address within thirty-five (35) days of the Court's mail having been returned is cause for dismissal of his complaint for failure to prosecute.

Bitner has not made the necessary effort to prosecute this case. Accordingly, dismissal with prejudice of his complaint is proper under Fed. R. Civ. P. 41(b) for his failure to prosecute.

**IV.    Recommendation**

It is therefore **RECOMMENDED** that Bitner's § 1983 complaint against the defendants, Sheriff C. Weber, Major Brinkly, Captain Zeringue, Lieutenant Leclair, Sergeant Naquin, and the Lafourche Parish Sheriff's Department, be **DISMISSED WITH PREJUDICE** for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

---

[13] Rec. Doc. No. 1, p.6.

[14] Rec. Doc. No. 25.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[15]

New Orleans, Louisiana, this 7th day of July, 2015.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[15] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.